In re WYNCO DISTRIBUTORS,
INC., Debtor.

WYNCO DISTRIBUTORS,
INC., Plaintiff,

v.

Henry B. WYNN, Individually and as
Trustee of the Charles S. Wynn
Revocable Trust, Defendant.

Bankruptcy No. 90–17735–CJK.
Adv. No. A91–1001.

United States Bankruptcy Court,
D. Massachusetts.

April 24, 1991.

**132**

---

MEMORANDUM OF DECISION ON MO-
TIONS OF HENRY B. WYNN AND
ALBERT WYNN TO DISMISS PETI-
TION FILED UNDER CHAPTER 11
AND TO DISMISS ADVERSARY
PROCEEDING

CAROL J. KENNER, Bankruptcy
Judge.

Henry B. Wynn and Albert Wynn have
moved to dismiss the above-captioned

Chapter 11 case and adversary proceeding
on the grounds that Debtor's Chapter 11
petition was filed in bad faith and without
proper authority. The Debtor and Flexco
Company, a creditor, oppose the motions.

a) *Removal of Authorizing Directors*

■ The motions set forth three argu-
ments for dismissal. The first is that the
filing of the Debtor's Chapter 11 petition
was not authorized because the corporate
directors who authorized the filing had
been removed as of the time the petition
was filed; and, in any event, upon their
removal, they lost authority to "continue
presenting the petition." The Court rejects
this argument for two reasons. First, the
argument is moot because the Debtor's
current Board of Directors has ratified the
Chapter 11 filing and has thereby cured the
alleged defects upon which this argument
is predicated.[1]

■ Second, the argument fails to state
a basis for relief. The movants do not
allege that the corporate directors who au-
thorized the bankruptcy filing had been
removed when they authorized the filing,
only that they had been removed when the
petition was filed. The latter act is merely
ministerial, so it matters not that those
who authorized the filing were removed
between the time of the authorization and
the time of the filing. Their removal would
be relevant only if, after the removal but
before the filing, the newly appointed di-
rectors rescinded the authorization to file.
The removal of directors does not itself
invalidate acts those directors took while
they were directors. Since the movants do
not allege either that the directors who
authorized the filing lacked authority when
they authorized the filing or that their au-
thorization was rescinded before the filing,
this argument fails to state a basis for
relief.

b) *Lack of Unanimous Trustee Autho-
rization*

■ The movants argue that the Debt-
or's bankruptcy filing was unauthorized for

1. The Debtor alleged in its memorandum in opposition to the motions to dismiss that the Board of Directors has ratified the Chapter 11 filing. The movants have not denied this allega-tion. Therefore, the Court deems the allegation admitted. The Court has received no evidence on this issue.

a second reason: under the terms of the trust that owns the stock of the Debtor corporation, all three of its trustees must consent in writing to a decision to file a Chapter 11 petition on behalf of the corporation; but the movants, both of whom are trustees of the trust, did not consent to the filing. The Debtor argues in response that the decision to file a petition under Chapter 11 on behalf of the corporation is not one on which the trust instrument requires the agreement of all trustees. And, in the alternative, the Debtor further argues that even if the trust instrument does require unanimous consent, that provision does not limit the authority enjoyed by the Debtor's Board of Directors under Massachusetts law and under the Debtor's by-laws to file a petition under Chapter 11 on behalf of the Debtor.

The Court finds the latter argument persuasive.[2] The Charles S. Wynn Revocable Trust (the "Trust") owns all the shares of stock of the Debtor corporation and therefore may exercise as much control over the Debtor as stockholders may exercise under Massachusetts law, the Debtor's articles of organization, and the Debtor's by-laws. The Trust, however, does not occupy any seats on the Debtor's Board of Directors, so the Trust's authority to control the Debtor is limited to the authority it holds as a stockholder. If the movants are correct in stating that the trust instrument permits the Trustees to authorize the filing of a Chapter 11 petition on behalf of the Debtor only with the consent of all three trustees, that is a limitation only on the power of the Trust to act as a stockholder. It does not limit the authority of the Board of Directors to act for the corporation.

As the Debtor has pointed out, Massachusetts law provides that the directors of a corporation

> may exercise all the powers of the corporation, except such as by law, by the articles of organization or by the by-laws of the corporation are conferred upon or reserved to the stockholders.

G.L. c. 156B, § 54 (added by St.1964, c. 723, § 1). The movants have not alleged that the law, the Debtor's articles of organization, or the Debtor's by-laws confer upon or reserve to the stockholders the power to file a petition under Chapter 11 on behalf of the Debtor. In fact, the Debtor's by-laws provide that the Board of Directors

> shall have the entire management of the business of the corporation and sole control of its property, business and affairs, and for this purpose the Board of Directors is hereby vested with all the powers possessed by the Corporation itself.[3]

In short, it appears that when the Debtor's Board of Directors authorized the filing of the Chapter 11 petition, the Board was acting within its authority, which authority the Trust instrument could not and did not circumscribe. Therefore, the fact that the movant trustees did not consent to the Debtor's bankruptcy filing does not render the filing unauthorized or invalid.

c) *Bad Faith*

■ The movants' third and final argument is that the Debtor's bankruptcy petition should be dismissed because it was filed in bad faith. Specifically, the movants assert the Debtor commenced this Chapter 11 case solely as a litigation tactic to prevent the movants from assuming control over the Debtor. They further contend that the Debtor is quite solvent and in good financial health and has no legitimate reason to operate under Chapter 11.

In response the Debtor explains that eight years of litigation among the Trustees of the Charles S. Wynn Revocable Trust over control of the Debtor have caused serious financial problems for the Debtor that fully justify its seeking relief under Chapter 11. According to the Debtor, the financial toll of the litigation has taken several forms. Over the last eight years, the cost to the Debtor of defending the various legal proceedings brought by Henry and Albert Wynn against Paul

2. Therefore, the Court need not and does not address the former.

3. This quote from the Debtor's by-laws is taken from the Debtor's memorandum in opposition to the motions to dismiss. The movants have not challenged its accuracy.

Wynn has exceeded $750,000. In recent years the Debtor's revenues have declined approximately 27% (because of a downturn in the New England building industry) such that the Debtor can now ill afford these continuing legal expenses. In 1989, legal and accounting fees of over $70,000 left the Debtor with a net loss of $33,633.00. As a result, the State Street Bank and Trust Co., with whom the Debtor has had a line of credit for over twenty-five years, advised the Debtor that it would discontinue the Debtor's line of credit by December 1, 1990.[4] Moreover, the battle for control of the Debtor has made the Debtor's major suppliers watchful and wary of any changes that might occur in the management of the Debtor as a result of the litigation. The Debtor concedes that it is currently solvent—that the value of its assets exceeds its liabilities—but argues that unless it is afforded Chapter 11 relief, the Debtor will soon have little equity left to fight over.

These allegations by the Debtor are supported by the affidavits of Susan J. Wynn and Leland B. Goldberg, which are substantially uncontested.[5] And the Debtor's position is further supported by the Chapter 11 Trustee, Joseph Braunstein, and by the Debtor's major suppliers. The Chapter 11 Trustee agrees with the Debtor that if this bankruptcy proceeding is dismissed, the Debtor will not long survive. And the suppliers state that if the Chapter 11 is dismissed, they themselves will file an involuntary petition against the Debtor. Whether or not this tactic would be successful, the suppliers' threat makes clear their anxiety about the Debtor's solvency.

The Court concludes by a preponderance of the evidence that the Debtor's Chapter 11 petition was filed in good faith. Nothing in the Bankruptcy Code requires that a Debtor become desperate before seeking relief. Chapter 11 is a hospital of sorts, not a morgue, and many debtors headed for trouble would do well to file sooner rather than later. The fact that the Debtor's financial troubles stem from internecine litigation matters little as long as the financial troubles are real. The Court is satisfied that they are.

For all the reasons cited above, the motions to dismiss filed by Henry Wynn and Albert Wynn in Case No. 90–17735–CJK and in Adversary Proceeding No. A91–1001 should be and have been denied.

---

4. The Debtor has not stated whether the line of credit has in fact been discontinued.

5. The movants have challenged the Debtor's allegation in only one respect. The movants have submitted evidence showing that the Debtor incurred legal and accounting fees in 1989 of only $10,250, not over $70,000, as the Debtor alleged. However, the same evidence shows that the fees totalled $108,931 in 1990, and $357,782.88 since October 31, 1983. Therefore, the Court is satisfied that costs of litigation being borne by the Debtor are not inconsequential.